# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TIMOTHY JAY KAPRELIAN,

        Plaintiff,

v.                                           Case No. 09-CV-609

INVESTIGATOR BOWERS,
INVESTIGATOR SCHAUER,
INVESTIGATOR RUSFELDT,
OFFICER JAROSZ,
OFFICER KLAUS,
MOUNT PLEASANT POLICE DEPARTMENT,
VILLAGE OF MOUNT PLEASANT, and
OFFICER RELICH,

        Defendants.

## ORDER

The plaintiff, Timothy Jay Kaprelian, a Wisconsin state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He was granted leave to proceed *in forma pauperis* on a claim that the defendants, in the process of a criminal investigation, searched his residence and unreasonably seized pornographic films and books in violation of the Fourth and Fourteenth Amendments, and a claim that one or more of the defendants viewed the pornographic films in violation of the First, Fourth, and Fourteenth Amendments. The defendants have filed a motion for summary judgment, which will be addressed herein.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, — F.3d —, 2011 WL 31855, at *3 (7th Cir. Jan. 6, 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

# FACTUAL BACKGROUND[1]

On the afternoon of July 1, 2006, officers from the Mount Pleasant Police Department were dispatched to a residence located at 1454 South Emmertsen Road, Mount Pleasant, Wisconsin, upon notification of a possible battery involving a Laurie Kemp. Upon their arrival and prior to entry into the residence, Ms. Kemp reported to the officers that the plaintiff, Timothy Jay Kaprelian, sexually assaulted her at her 1454 South Emmertsen Road residence.

Ms. Kemp and the plaintiff had known each other for approximately five years, and, although they had previously been involved in an intimate relationship, at the time of the assault they were friends and roommates living together at this residence. Ms. Kemp stated that she had been sexually assaulted by the plaintiff and she provided additional statements concerning the extent of the assault. Several of the officers dispatched to the incident scene observed that Ms. Kemp's head was shaved and also observed injuries to her neck, legs, buttocks, back, face, head, knees, shins, ankles, and breasts. Ms. Kemp advised the officers that urine, pieces of hair, and cut clothing were still in the residence.

Ms. Kemp initially reported to Mount Pleasant police that the residence was her home. After the police entered the home, she also indicated that her parents owned the home and that the plaintiff was residing there and reimbursing her for credit card debt and other loans. Ms. Kemp advised officers that both she and the

---

[1] Facts are taken from the Defendants' Proposed Findings of Fact and from the Affidavit of Timothy Jay Kaprelian.

plaintiff had access to the entire house and that the plaintiff had no separate locked room or bedroom.  The room the plaintiff slept in was never locked, he never restricted Ms. Kemp from entering the room or took any steps to exclude her from the room, and she could go into the room without asking for his permission.

Ms. Kemp gave the Mount Pleasant police permission to enter the home to recover evidence as well as to attempt to locate the plaintiff who she thought was still in the house.  Officers entered Ms. Kemp's home based upon her consent as the owner, her representation as having access to the entire house including the computer room where the plaintiff slept, and based upon concerns that evidence identified by Ms. Kemp would be destroyed by the plaintiff.  This evidence included rope, clothing, and hair.  Ms. Kemp told the officers that the rope she had been tied up with was in the computer room, and that her cut up clothing and hair was in the living room.  Ms. Kemp told the officers that the sexual assaults had taken place in several rooms, and that the officers could find evidence in the computer room, living room, and basement.

After entering the residence, officers observed the plaintiff through an open doorway to a bedroom under a blanket, laying face-down on a bed. The plaintiff was arrested and taken into custody; he was cooperative and at no time did he tell any officer that they could not enter or search the house.

Officers at the incident scene were directed to photograph, document, and recover evidence.  Officers involved in the identification and collection of evidence included defendants Relich, Jarosz and Klaus.

Over forty separate items of evidence were collected on July 1, 2006, from Ms. Kemp's home. Items of evidence secured and photographed included handcuffs, computers, pieces of clothing, hair (shorn), pieces of rope, zip ties and electrical tape, videotapes, a video recorder, an 8mm camera, pornographic magazines, Polaroid photos depicting female bondage, DVDs, sealed syringes, scissors, duct tape, and a dildo. The evidence items were placed into evidence bags or envelopes which were brought back to the Police Department for documentation on a property inventory form. Additional items of evidence, including unidentified pills, capsules, steroids, syringes, DVDs, and CDs, were subsequently provided to Mount Pleasant police after having been found in the residence by Ms. Kemp and other family members. Ms. Kemp also told the officers that the recordings contained pornography and possible evidence of other assaults.

Various CDs, VHS tapes, and 8mm tapes collected by the Police Department on July 1, 2006, and other recordings subsequently found by Ms. Kemp and members of her family and turned over to the Police Department were viewed by Investigator Schauer. The recordings, some commercial and others without identifying markers or unknown labels, were examined or viewed by Investigator Schauer to determine if any contained depictions of the assault on Ms. Kemp, other assaults of Ms. Kemp, or assaults involving other victims. Investigator Schauer did not view the commercial tapes, other than to confirm that the recording was a commercial recording. One 8mm tape, contained in an 8mm camera taken from the residence by Mount Pleasant police on July 1, 2006, contained recording images of

the plaintiff's July 1, 2006, assault of Ms. Kemp. In addition, two 8mm tapes labeled 9/3/05 depicted an earlier assault of Ms. Kemp by the plaintiff which occurred in September 2005. A third videotape depicting sexual acts involving the plaintiff and Ms. Kemp was also recovered and then viewed by Ms. Kemp who thought that the tape had been erased.

In late July 2006, the Racine County District Attorney's office asked that search warrants be requested regarding the computer seized from Ms. Kemp's residence, the shirt plaintiff was wearing in the course of the assault, and to obtain DNA samples from the plaintiff to serve as a standard for analysis. Subsequent analysis of the computer systems indicated that the information or images uploaded did not contain images of Ms. Kemp.

In the process of the circuit court criminal action, the plaintiff filed a Motion to Suppress evidence seized from the residence and room. The Circuit Court Judge denied the plaintiff's Motion to Suppress finding that the police had consent to enter the home, and that exigent circumstances also existed to arrest the plaintiff and seize the evidence.

In response to the defendants' motion for summary judgment, the plaintiff filed an affidavit in which he avers:

> I, Timothy Jay Kaprelian, lived with Laurie A. Kemp for five years from 2001 to 2006. I witnessed Kemps' use of a prescription drug "Alparzolan" and upon belief Kemp has used this drug for over a decade. I have reviewed the motion hearing on the videotapes and Ms. Kemp stated she has no memory of the tapes. I have reviewed Ms. Kemp's statement to the court, in it she states she has no memory how all this started and she cannot remember the number of people who

she invited to the home that evening. I have reviewed the memorandum in opposition to defense suppression motion, filed October 24, 2006 and as stated "entering the residence, arresting the defendants and search for crime evidence." I have reviewed the preliminary hearing, July 12, 2006, as the district attorney states "Counsel reviewing the videotape that has been recovered." I state that the video tape was a film made between Ms. Kemp and Kaprelian and made before July 1, 2006. I state that the affidavit of the search warrant for the computers was included in the discovery. I state that the defendant failed to answer the discovery requested. I state that during the interview, Investigator Schauer made statements himself and coerced the interview. Upon information and belief, Investigator Bowers was in charge of the scene that day July 1, 2006. Affidavit of Investigator Bowers and Investigator Rusfeldt are absent from the defendants' motion. Upon information and belief the affidavits of Kemp, Schauer and Smith are based on false information and submitted in bad faith and not competent to testify to matters stated therein their affidavits.

(Affidavit of Timothy Jay Kaprelian.)

## DISCUSSION

The plaintiff claims that the defendants' search of the residence and seizure of pornographic videotapes violated his constitutional rights, and the subsequent viewing of the tapes also violated his rights. As an initial matter, the court notes that the defendants contend that the plaintiff's federal court claims are precluded by the state trial court's denial of his motion to suppress. However, it is not clear that the decision is final. *See Highway J Citizens Group v. United States Dep't of Trans.*, 456

F.3d 734, 741 (7th Cir. 2006).  Therefore, the court will consider the merits of the plaintiff's Fourth Amendment claims.[2]

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV.  The Fourth Amendment generally protects an individual's right to be free from warrantless intrusions into a home.  *United States v. Foxworth*, 8 F.3d 540, 544 (7th Cir. 1993).  However, it is well established that consent by someone authorized to provide it is an exception to the general prohibition of police entry without a warrant:

> While a warrantless entry for the purpose of conducting a search ordinarily violates the Fourth Amendment, a well settled exception to this general rule permits authorities to conduct a search without a warrant if they obtain voluntary consent either from the individual whose property is to be searched, from a third party possessing common authority or joint control over the premises, or from an individual with the apparent authority to consent to the search.

*United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir. 1995) (citations omitted); *United States v. Matlock*, 415 U.S. 164, 170 (1974) ("the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 235 (1973) (voluntary consent constitutes waiver of Fourth Amendment rights).  In a § 1983 action alleging a Fourth Amendment

---

[2] Although the complaint was initially presented as also bringing claims under the First and Fourteenth Amendments, further development of these claims as shown in the defendants' motion for summary judgment and the plaintiff's response thereto, demonstrate that the plaintiff's claims arise under the Fourth Amendment.  *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005); *Graham v. Connor*, 490 U.S. 386, 395 (1989).

violation, it is the plaintiff's burden to disprove a valid consent once the issue of consent has been raised. *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997).

Consent to a search or seizure may be obtained from any person who has common authority over the property (actual authority), or who would appear to a reasonable person, given the information that law enforcement possessed, to have common authority over the property (apparent authority). *United States v. James*, 571 F.3d 707, 714 (7th Cir. 2009) (citing *United States v. Basinski,* 226 F.3d 829, 834 (7th Cir. 2000)). In the search context, the Supreme Court has expounded: "The authority which justifies the third-party consent ... rests rather on mutual use of the property by persons generally having joint access or control for most purposes[.]" *Matlock*, 415 U.S. at 171 n.7.

In this case, it is undisputed that Ms. Kemp consented to the police entering the residence because she thought that the plaintiff was still in the residence and also to obtain evidence from the assault. It is also undisputed that officers entered Ms. Kemp's home based upon her consent as the owner, her representation as having access to the entire house, including the computer room where the plaintiff slept, and based upon concerns that evidence identified by Ms. Kemp would be destroyed by the plaintiff. The officers recovered and documented evidence based on their search, and CDs, videotapes, and 8mm tapes were viewed by Investigator Schauer to determine whether any contained depictions of the assault on Ms. Kemp, or assault involving other victims.

In sum, the undisputed facts reveal that the officers had consent to enter the home and search for evidence and that, upon search of the home, they found both the plaintiff and evidence. The officers' actions were justified based on Ms. Kemp's consent. *See United States v. Thompson*, 524 F.3d 1126, 1133 (10th Cir. 2008) (owner of house had actual authority to consent to warrantless search of bedroom because owner informed police that bedroom was not exclusively tenant's room, door to bedroom did not lock, and owner and others were free to go in and out of bedroom); *United States v. James*, 571 F.3d 707, 715 (7th Cir. 2009) (any evidence discovered during a consent search may be seized and admitted at trial).

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket #46) be and the same is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to renew motion (Docket #62) be and the same is hereby **DENIED**.

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED** on its merits, with prejudice.

The clerk of the court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge